James WOODS *v.* STATE of Arkansas

CA CR 88-95                                    760 S.W.2d 392

Court of Appeals of Arkansas
Division I
Opinion delivered November 30, 1988

*Thomas E. Brown*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. Appellant James Woods was convicted by a jury of three counts of battery in the second degree and sentenced as an habitual offender to serve six years in the Arkansas Department of Correction on each count. The sentences are to run concurrently. One of appellant's arguments on appeal is that the trial court erred in denying his motion to dismiss for violation of the right to a speedy trial. Because we find merit in this argument, we reverse and dismiss without addressing the other points argued.

On July 31, 1986, appellant, an inmate at the maximum security unit of the Arkansas Department of Correction at

Tucker, Arkansas, was taken with several other inmates from the administrative segregation area to one of the punitive dayrooms to watch TV. When their time was up, they refused to leave the dayroom. The evidence discloses that inmates assigned to administrative segregation are handcuffed every time they are moved. In a process referred to as "taking the cuffs," the inmates are required to turn around to the bars while a correction officer puts his hands through the bars and handcuffs the inmate behind his back before the door to the cell is opened.

At the time of the incident in this case, the appellant and four other inmates refused to take the cuffs. Appellant told the guard that he had some "commissary" coming to him and he wanted it before he left the dayroom. After being told he was not getting any "commissary," appellant said, "Well, you'll have to come in and get me, because I'm not coming out." Appellant had a knife and threatened to kill the first man who took the handcuffs. After all the inmates refused several times to take the cuffs, the correction officers entered the room and a confrontation ensued during which several correction officers were injured. A videotape was made of the incident.

On August 20, 1986, appellant was charged, along with three other defendants, with three counts of battery in the second degree. Trial for the four defendants was set for March 10, 1987. On March 5, 1987, appellant's then counsel filed a motion seeking to be removed and for a continuance from the trial date of March 10. On March 9, 1987, these motions were granted, present counsel was appointed and trial was rescheduled for June 16, 1987. On April 28, 1987, appellant filed a motion for severance from the other defendants and for a continuance not to exceed 30 days from the June 16th trial date. On May 15, 1987, the trial court granted the motions and rescheduled appellant's trial for August 5, 1987. Then on July 10, 1987, appellant's case was transferred along with numerous others to the newly created Third Division of the Jefferson County Circuit Court. Nothing further occurred in appellant's case until January 20, 1988, when appellant filed a motion to dismiss alleging the time for trying the case had lapsed and the charges should be dismissed. On January 22, the trial court entered an order scheduling appellant's case for trial on February 19, 1988. On January 29, 1988, the trial court denied appellant's motion to dismiss finding that the order

"should be, and is hereby denied, for good cause shown."

On the day of trial, appellant renewed his motion to dismiss the charges based upon the failure of the state to bring the case to trial within the requirements of Rule 28 of the Arkansas Rules of Criminal Procedure. Appellant further objected, pursuant to Rule 28.3, that the court had not entered an order or docket entry delineating the specific reasons for the granting of the continuance and on the basis that there had not been an adequate showing of good cause. Appellant then requested that the court state the reasons for the excludable periods. The court responded "being new court cases recently assigned, and lack of courtroom space, since the other courts had already set their dockets . . . and it was some time before courtroom space was available, that, together with the excludable period that had already been made were the reasons why this Court denied the original motion, and why this court is denying your present motion for a dismissal."

The time for trial when a defendant is incarcerated in prison is determined by Ark. R. Crim. P. 28.1(b):

> Any defendant charged with an offense in circuit court and incarcerated in prison in this state pursuant to conviction of another offense shall be entitled to have the charge dismissed with an absolute bar to prosecution if not brought to trial within twelve (12) months from the time provided in Rule 28.2, excluding only such periods of necessary delay as are authorized in Rule 28.3.

The time for trial shall commence running from the date the charge is filed. Ark. R. Crim. P. 28.2(a).

Appellant was charged on August 20, 1986, and tried on February 19, 1988, approximately 18 months later, exceeding the 12-month limitation of Rule 28.1(b) by approximately 6 months. Once an accused has shown the trial is to be held after the speedy trial period has expired, the state bears the burden of showing the delay is legally justified. *Allen v. State*, 294 Ark. 209, 742 S.W.2d 886 (1988).

The parties agree that approximately 147 days were properly excluded under Rule 28.3(c) which provides that the period of delay resulting from a continuance granted at the request of the defendant or his counsel shall be excluded in computing the time

for trial. This would extend the time for trial until the middle of January 1988. The state, however, also contends that a forty-five day period necessary for the procurement of a jury, a courtroom equipped to handle a jury, and a bailiff is also excludable as a period of delay for "good cause" under Rule 28.3(h), and when this period is added to the 12-month period already extended by appellant's continuances, the deadline for appellant's trial was legally extended to the first part of March 1988. We do not agree.

■ In *Barker* v. *Wingo*, 407 U.S. 514 (1972), the United States Supreme Court set out criteria by which to judge the speedy trial right. In that case, the Court held that the state has the duty to see that cases are brought to trial. The Court adopted a balancing test which weighed the conduct of both the defendant and the state, and identified four factors to be considered: (1) length of delay, (2) the reason for delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. In discussing the reasons for the delay, the United States Supreme Court said a neutral reason such as negligence or overcrowded courts should be weighed less heavily but nonetheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant.

In *Novak* v. *State*, 294 Ark. 120, 741 S.W.2d 243 (1987), the Arkansas Supreme Court considered the question of whether a judge's absence due to illness is good cause for delay in bringing an accused to trial. In discussing *Barker* v. *Wingo, supra*, the court stated:

> Our court, consistent with the principles announced in *Barker*, has placed the burden on the courts and state to assure a defendant receives a speedy trial. In *Norton* v. *State*, 273 Ark. 289, 618 S.W.2d 164, for example, we refused to hold as excludable the period between the recusal of the prosecutor and the appointment of his replacement. We noted the delay caused by the failure to appoint an immediate replacement was not the defendant's fault; instead, we pointed out that it was the court's duty to have appointed a substitute attorney for the state. In still another case, *Harkness* v. *Harrison*, 266 Ark. 59, 585 S.W.2d 10, we rejected the state's argument that a congested docket justified a period of delay to be excluda-

ble under Rule 28, and in so holding, we pointed out that no docket entry reflecting the reason for delay had been entered — a requirement under Rule 28.3(b) . . . . Again, our decision in *Harkness* clearly recognizes the court's duty to bring criminal cases to a speedy trial.

294 Ark. at 124. The court then observed that the weight of authority appears to hold that the illness or incapacity of a judge does not justify delay in giving defendants a speedy trial. The court continued as follows:

The Wisconsin Supreme Court case of *Hadley*, 66 Wis.2d 350, 225 N.W.2d 461, is particularly instructive because the court there discussed the speedy trial principles set out in *Barker* and applied them to a situation where the defendant's trial had been postponed because of the judge's illness and a delay in appointing another in his place. In considering the factors or criteria in *Barker*, the Wisconsin Supreme Court, in holding the defendant was denied a speedy trial, found the length of delay was excessive, the delay was attributable to insufficient judicial and prosecutorial manpower and the defendant timely asserted his right to a speedy trial.

We now consider the instant case in light of the factors in *Barker*. . . . In sum, the state simply has failed to show why the appellants' case was not tried within the required time by the regular sitting judge, a special elected judge or one on exchange. *See* Ark. Const. art. 7, §§ 21, 22.

294 Ark. at 125.

■ In the present case, the delay in appellant's trial exceeded the 12-month limitation imposed by Rule 28.1(b) by approximately 6 months. While the delay caused by appellant's requested continuances was clearly excludable, we do not think the additional period of delay is supported by the statements made by the trial judge. *See Harkness* v. *Harrison*, 266 Ark. 59, 63, 585 S.W.2d 10 (1979). There was no reason given for transferring this case to the third division of the circuit court and no explanation made for the lack of courtroom space to house that division. It was the state's duty to assure that the appellant received a speedy trial. The appellant promptly asserted his right

after the 12-month period as extended by his continuances had run, and no affirmative demonstration of prejudice is necessary to prove a denial of a constitutional right to a speedy trial. *Novak, supra.*

Because the state failed to show that the delay in bringing appellant to trial was justified, we must reverse and dismiss this case.

Reversed and dismissed.

CORBIN, C.J., and COOPER, J., agree.