**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| IN THE MATTER OF THE PERSONAL RESTRAINT OF:<br><br>ANTHONY PAUL JOHNSON,<br><br>                Petitioner, | No. 85640-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Anthony Johnson petitions this court to vacate his assault convictions based on allegations of discovery violations by the State, trial delays, and ineffectiveness of his investigator. Because Johnson does not establish grounds for relief, we deny the petition.

I

Johnson was convicted of assault in the first degree with a deadly weapon and assault in the second degree.[1] Johnson appealed. While the appeal was pending, Johnson also filed the instant personal restraint petition (PRP). Johnson's PRP was stayed pending issuance of the mandate in his direct appeal. Ord. of Stay, (Sep. 19, 2023).

We upheld Johnson's convictions on direct appeal. State v. Johnson, No. 84181-5-I, (Wash. Ct. App. Jan. 29, 2024) (unpublished), https:// www.courts.wa.gov/opinions/

---

[1] King County Superior Court Cause No. 21-1-03601-8 KNT.

pdf/841815.pdf, review denied, 3 Wn.3d 1005 (2024).  The stay on Johnson's PRP was lifted.

On February 12, 2025, this court issued an order dismissing Johnson's claim concerning the accuracy of the verbatim report of proceedings as frivolous and referring all other claims to a panel for review and determination.  Ord. Dismissing in Part & Referring to a Panel, (February 12, 2025).

II

Collateral relief from a conviction through a PRP is an extraordinary remedy and petitioners must meet a high standard to obtain relief.  In re Pers. Restraint of Kennedy, 200 Wn.2d 1, 12, 513 P.3d 769 (2022).  A petitioner may request relief through a PRP when they are under an unlawful restraint.  RAP 16.4(a)-(c).  "A personal restraint petitioner must prove either a (1) a constitutional error that results in actual and substantial prejudice or (2) nonconstitutional error that 'constitutes a fundamental defect which inherently results in a complete miscarriage of justice.' " In re Pers. Restraint of Monschke, 160 Wn. App. 479, 488, 251 P.3d 884 (2010) (quoting In re Pers. Restraint of Davis, 152 Wn.2d 647, 672, 101 P.3d 1 (2004)).  The petitioner must support the petition with facts or evidence and may not rely solely on conclusory allegations. Monschke, 160 Wn. App. at 488; RAP 16.7(a)(2)(i).  The petitioner has the burden to prove prejudice by a preponderance of the evidence.  In re Pers. Restraint of Lord, 152 Wn.2d 182, 188, 94 P.3d 952 (2004).

In evaluating PRPs, we can (1) dismiss the petition if the petitioner fails to make a prima facie showing of constitutional or nonconstitutional error; (2) remand for a full hearing if the petitioner makes a prima facie showing but the merits of the contentions

cannot be determined solely from the record; or (3) grant the petition without further hearing if the petitioner has proven actual prejudice or a miscarriage of justice. In re Pers. Restraint of Stockwell, 160 Wn. App. 172, 176-77, 248 P.3d 576 (2011).

III

Johnson argues that (a) trial delays violated both (b) his right to a speedy trial under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution and (c) the time-for-trial rule in CrR 3.3.

A

Johnson was arrested on or around August 21, 2021, and his trial began six months later on February 22, 2022. See State v. Corrado, 94 Wn. App. 228, 232, 972 P.2d 515 (1999) (a defendant's constitutional rights to a speedy trial attach when a charge is filed or arrest is made, whichever occurs first). Johnson remained in custody during this entire time period and represented himself throughout the proceedings. Johnson's argument focuses on four continuances granted during that time, on October 27, 2021, November 9, 2021, January 13, 2021, and February 9, 2022.

At the omnibus hearing on October 27, 2021, the parties disagreed about redacting witness names and contact information on discovery materials that the State was providing to Johnson. The witnesses in question lived in the same apartment building where Johnson resided and where the charged assaults occurred. The State argued that redaction of witness names and information was required "because of very valid and serious safety concerns" and "based on the gravity and seriousness of the offense and what the State knows about [Johnson's] conduct in the apartment complex where these witnesses reside." The court set the discovery dispute for a future motion

hearing on November 5, 2021. Johnson stated that he had received a list of investigators and had just begun reaching out to investigators to take his case that morning "so I need to actually touch base with one, get them locked in. Once I do, we're good to go from there." The trial court found good cause to continue the trial date to November 23, 2021, setting the speedy trial date to December 23, 2021. Johnson objected to the continuance.

The court explained that the continuance was to allow for the discovery dispute to be resolved and for Johnson to secure an investigator:

> [T]he Court, on its own motion, is finding good cause, understanding currently the administration that still needs to be done on this case, including the fact that you need to secure . . . an investigator, a pending motion in which the parties will determine . . . what redactions are appropriate in light and in the context of somebody proceeding pro se.
> And hopefully, by then you have an investigator and can start the process at least.

After the hearing, the trial court entered a written order stating that the "court made this motion to continue for the following reasons" and defense objected: "Court finds good cause to continue trial date so defendant can have investigator appointed & so that redaction issues can be litigated."

At the motion hearing on November 5, 2021, the trial court ordered the State to provide the witnesses' addresses and video recordings of interviews.

At a hearing on November 9, 2021, Johnson told the court that there were still discovery materials from the State that he had not yet received, including witness video statements, transcripts of 911 calls, and unredacted police reports. Johnson explicitly answered no when the court asked him if he was answering ready for trial:

> THE COURT: So the question I have to answer today is: Are you answering ready for trial? Or are—
> MR. JOHNSON: No. I—I have to still reveal the discovery that I don't have.

Johnson then objected to a proposed continuance, so the court asked again if he was ready for trial:

> THE COURT: So are you prepared to go to trial on November 23rd?
> MR. JOHNSON: I'm not going to be prepared to go to trial on November—I wasn't prepared—I believe that a continuance wasn't the right answer.

The court then gave Johnson a third chance to choose to keep the scheduled trial date, which Johnson declined:

> THE COURT: . . . So you can either go to trial on the 23rd, or I can continue the case and find good cause to do so. If you need to extend the—if you need additional time, I would find good cause to do so.
> MR. JOHNSON: Well, having to choose between my right to speedy trial or my right to be prepared, I don't have any choice except to try to be prepared.

Accordingly, the court found good cause for a continuance and set the trial date for January 13, 2022, speedy trial expiration date of February 11, 2022.

At a hearing on January 13, 2022, the trial court informed Johnson that his trial would be continued because King County Superior Court was suspending in-person jury trials through February 11, 2022, due to an increase of the Omicron variant of COVID-19. The court provided Johnson a written copy of the executive order ordering in-person jury trials suspended and set his trial for February 14, 2022. Johnson did not object to this continuance at the hearing.

On February 9, 2022, the State moved to continue the trial one week to February 22, 2022, because there was an upcoming motion hearing on Johnson's motion for standby counsel, the State's lead detective would be unavailable, and the State had recently received Johnson's proposed witness list and wanted to interview a few of

those people before trial.  Johnson objected to the continuance.  The court granted the one-week continuance based on "the availability of witnesses, the need to do some final interviews, and also the Court's trial schedule."  In a written order after the hearing, the court wrote that the "State made a motion to reset hearing dates and extend time-for-trial expiration" by continuing trial date for the following reasons: "State's lead detective has unavailability between 02/21-02/27 due to out of state training.  State also requires time to interview defense witnesses."

B

Johnson argues that the trial court violated his constitutional right to a speedy trial.  We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution both guarantee a criminal defendant the right to a speedy trial.  State v. Ross, 8 Wn. App. 2d 928, 932, 441 P.3d 1254 (2019).  Our analysis for the right to a speedy trial under the Sixth Amendment and article I, section 22 is substantially the same.  Ross, 8 Wn. App. 2d at 941.  "We review de novo whether a defendant's constitutional right to a speedy trial has been violated."  Ross, 8 Wn. App. 2d at 941.

To trigger a constitutional speedy trial analysis, a defendant must first "make a threshold showing that the time between the filing of charges and trial exceeded the ordinary interval for prosecution and crossed into presumptively prejudicial delay."  Ross, 8 Wn App. 2d at 942.  Once a defendant makes this threshold showing, we then apply the balancing analysis outlined in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 33 L. Ed. 2d 101 (1972) to determine whether the delay violated the defendant's constitutional

right to a speedy trial. State v. Ollivier, 178 Wn.2d 813, 827, 312 P.3d 1 (2013). The nonexclusive Barker factors include the "[l]ength of delay, the reason for the delay, the defendant's assertion of [their] right, and prejudice to the defendant." Barker, 407 U.S. at 530. The Barker analysis is fact-specific and dependent "on the particular circumstances of the case." Ross, 8 Wn. App. 2d at 942. No one Barker factor "is sufficient or necessary to find a violation, but they assist in determining whether the speedy trial right was violated." Ross, 8 Wn. App. 2d at 942.

As to the threshold showing, Johnson's trial occurred six months after he was arrested and charged. Johnson cites two Ninth Circuit cases finding a six-month delay sufficient to trigger inquiry into the remaining factors. United States v. Valentine, 783 F.2d 1413, 1417 (9th Cir. 1986); United States v. Simmons, 536 F.2d 827, 831 (9th Cir. 1976). Johnson does not cite any Washington state cases finding a six-month delay sufficient. The State's response cites State v. Iniguez, 167 Wn.2d 273, 293, 217 P.3d 768 (2009), finding an eight-month delay is "just beyond the bare minimum needed to trigger the Barker inquiry under these circumstances." Turning to the facts here, Johnson remained in custody throughout the six-month period. Johnson was charged with two felonies; although the charges were not particularly complex, Johnson claimed self-defense, which added to the disputed issues at trial. The State's case rested on eyewitness testimony, with the State endorsing more than a dozen witnesses for trial. Johnson represented to the trial court that he was not prepared for trial at the first two continuance hearings at issue and the third continuance was due to a public health emergency temporarily suspending in-person jury trials. The State also points out that Johnson chose to represent himself, "lengthening the time required for even the most

basic pretrial tasks." In light of all these circumstances, the six-month delay was not presumptively prejudicial. Johnson has not proven a constitutional error that resulted in actual and substantial prejudice.

C

Johnson also argues that the trial court violated the time-for-trial rule in CrR 3.3. Again, we disagree.

CrR 3.3(b)(1)(i) requires a defendant who is in custody to be brought to trial within 60 days after the date of arraignment. Certain time periods are excluded from the computation of time, including continuances granted by the trial court. CrR 3.3(e). Continuances may be granted on the motion of a party or the court when "required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense." CrR 3.3(f)(2).

CrR 3.3 is a procedural right that is designed to protect, but not guarantee, the constitutional speedy trial right. State v. Andrews, 66 Wn. App. 804, 809-10, 832 P.2d 1373 (1992). A criminal charge not brought to trial within the time limits of CrR 3.3 must be dismissed with prejudice. CrR 3.3(h). We review alleged violations of CrR 3.3 de novo. State v. Kenyon, 167 Wn.2d 130, 135, 216 P.3d 1024 (2009). We review the decision to grant or deny a continuance for abuse of discretion. State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004).

Johnson argues that the trial court violated CrR 3.3 because the trial court did not explain on the record why the continuances were "required," failed to identify "exclusion periods," and failed to set a new trial within the time limits prescribed by CrR 3.3. As detailed in the timeline above, the trial court did explain at each hearing why the

continuance was required and set a new trial date that was within the prescribed time limits. The continuance periods granted by the trial court were the "excluded periods" Johnson refers to.

Johnson further argues that the State delayed or denied discovery to try to force him to be unprepared or lose his speedy trial rights. Again, as explained in the timeline above, the record reflects a genuine dispute about discovery redaction due to concerns about witness safety which was timely resolved at a motions hearing, not a conclusion that the State deliberately withheld discovery beyond a reasonable time after the dispute was resolved.

Johnson further argues that the trial court's January 13, 2022 continuance was unnecessary because his trial was scheduled to begin on January 13, 2022, five days before the order suspending new in-person jury trials was to take effect. The State responds that January 13, 2022, was a Thursday, and King County Superior Court does not conduct trials on Fridays. The following Monday, January 17, was a federal and state holiday, the State further explains, and the rest of that week King County Superior Court judges were in training and thus unavailable for trials. Given these administrative scheduling challenges, the trial court did not abuse its discretion in granting this continuance.

Johnson has not met his burden to demonstrate a nonconstitutional error that constitutes a fundamental defect which inherently results in a complete miscarriage of justice.[2]

---

[2] Johnson asserts that CrR 3.3 is unconstitutional but fails to provide any argument or authority in support of that argument. We therefore decline to address this claim.

IV

Johnson argues that the "ineffectiveness of his court appointed investigator" and the investigator's "untimely" withdrawal deprived him of his constitutional rights to a fair trial, equal protection, due process, and to compel attendance of witnesses. We disagree.

Johnson informed the court on the third day of trial testimony that his investigator had withdrawn from his case due to a death in the investigator's family. But this court requires a showing of prejudice as a predicate for a claim of deprivation of the right to State provided resources necessary to prepare a meaningful pro se defense. See State v. Silva, 107 Wn. App. 605, 624, 27 P.3d 663 (2001).

The prejudice argued by Johnson is that the investigator would have interviewed or subpoenaed witnesses for trial who would have testified that he acted in self-defense and that certain witnesses against him were biased. But Johnson alleges that the investigator told him earlier in the case that the witnesses were unwilling to talk to the investigator. Johnson further alleges that the investigator did not provide him with any documents related to witnesses and did not request witness interviews with the State. The subpoenas Johnson wanted to use to compel witnesses were not signed by a judge and thus unenforceable because, Johnson alleges without proof, the investigator told him a judge's signature was not required. That being the apparent state of Johnson's case during trial, Johnson fails to show how an investigator would have been able to suddenly produce the hypothetical witness testimony. Because Johnson fails to show prejudice, he fails to meet the standard for relief on a PRP.

V

Johnson argues that the State violated his constitutional rights by failing to timely provide discovery materials. We disagree.

Johnson contends that the first two continuances of his trial date were due to the State's "failure to provide discovery." As described in our discussion of continuances above, the record shows a good faith discovery dispute based on concerns for witness safety. Johnson argues that the State violated CrR 4.7 requiring the prosecutor to disclose certain materials and information to the defendant no later than the omnibus hearing. Even if, due to the redaction dispute, Johnson did not receive certain witness information by the omnibus hearing, he received it once the dispute was resolved, before trial and thus cannot show a nonconstitutional error that constitutes a fundamental defect which inherently results in a complete miscarriage of justice.

Johnson further argues that the trial court and/or State failed to provide him with a flash drive to create exhibits for trial. Johnson cites no authority requiring the State or the trial court to provide him a flash drive. As an alternative, the trial court suggested, and the parties agreed, that Johnson would provide a list of the audio and video exhibits that he wanted to introduce at trial and the State would burn those files onto a compact disc for him. Johnson further alleges that his posttrial proceedings have been prejudiced by this lack of access to audio and video discovery, but Johnson could have designated any trial exhibit as part of the appellate record.

Johnson cites Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), arguing that the State suppressed evidence favorable to him and that resulted in prejudice to him. Johnson fails to show that the State suppressed any evidence. And

-11-

at a pretrial hearing, the State repeatedly stated that there were no Brady materials in this case.

Johnson fails to meet his burden to prove either a constitutional error that results in actual and substantial prejudice or a nonconstitutional error that constitutes a fundamental defect which inherently results in a complete miscarriage of justice.

VI

Johnson argues that the trial court erred in denying his motion for a new trial. We disagree.

Many of Johnson's arguments for a new trial are the same grounds we address and dismiss above. Beyond that, Johnson's argument in his PRP focuses on what he describes as challenges to the facts found by the trial court; specifically, that Johnson could have requested a continuance to obtain a new investigator, that Johson was provided the option for the State to burn evidence onto a compact disc for Johnson to put it before the jury, and that it became apparent that all the tasks Johnson wanted the investigator to complete would not be done by the trial date. Johnson's challenges do not raise or prove either a constitutional error that results in actual and substantial prejudice or a nonconstitutional error that constitutes a fundamental defect which inherently results in a complete miscarriage of justice.

The petition is denied.

Mann, J.

WE CONCUR:

Feldman, J.

, ACJ